# LANDWEHR LAW FIRM
### ATTORNEYS AND COUNSELLORS AT LAW
Suite 835
*935 Gravier Street*
New Orleans, Louisiana 70112

MERRILL T. LANDWEHR
DARRYL T. LANDWEHR

TELEPHONE (504) 561-8086
FACSIMILE (504) 561-8088

November 8, 2019

**VIA FEDERAL EXPRESS**
Clerk of Court
32nd Judicial District Court
Parish of Terrebonne
7856 Main St.
Houma, LA 70361

*B*                187494

**Re:   New Suit**
    **Randy Leboeuf vs. Loren Hatle, Clean Metal Technologies, LLC and**
    **MicroClean Metals, LLC**
    **Our File No. 2190**

Dear Sir/Madam:

Enclosed herewith please find the Petition to Enforce Promissory Notes, Security Agreement and Commercial Guaranty Agreements, including four (4) copies thereof, for filing with your office. Please return the copy to me stamped and dated for my file, utilizing the enclosed self-addressed and stamped envelope.

Finally, a check in the amount of $425.00 is enclosed herewith to cover the filing fee. Please also note that the three defendants are being served through the Louisiana Long Arm Statute.

If anything further is needed, please advise.

Thank you for your assistance.

Sincerely yours,

Darryl T. Landwehr

Page 1 of 1

187494

**LANDWEHR LAW FIRM**
**COST ACCOUNT**
Ph. (504) 561-8086
1010 Common St. Suite 1710
New Orleans, LA 70112

7586
84-382/654

DATE  11/8/2019

PAY
TO THE
ORDER OF  Clerk of Court, Parish of Terrebonne   | $ 425.00

Four hundred twenty-five ———————————— DOLLARS

**REGIONS**

FOR  New Suit - Innovative Surface Prep
(Hill)

⑈000007586⑈ ⑆065403626⑆ 0056760477⑈

# EXHIBIT "1"

EXECUTION VERSION

# MEMBERSHIP INTEREST PURCHASE AGREEMENT

by and among

**Randy LeBoeuf,**
**as Seller**

**Loren L. Hatle,**
**as Buyer and Guarantor**

**Rocky Smith,**
**as Consenting Member**

and

**MicroClean Metals, LLC, and Clean Metal Technologies, L.L.C.**
**As Guarantors**

**Dated as of August 25, 2016**

*187494*

FILED

NOV 1 2 2019

Deputy Clerk of Court

26931012v.5

EXECUTION VERSION

## TABLE OF CONTENTS

ARTICLE I PURCHASE AND SALE ................................................................................ 1

| Section 1.01 | Purchase and Sale | 1 |
| Section 1.02 | Purchase Price | 2 |
| Section 1.03 | Repayment of Third Party Debt | 2 |
| Section 1.04 | Deferred Loan Repayment | 2 |
| Section 1.05 | Subject Patent | 2 |
| Section 1.06 | License Agreement | 3 |
| Section 1.07 | Closing | 3 |
| Section 1.08 | Transfer Taxes | 3 |
| Section 1.09 | Withholding Taxes | 3 |

ARTICLE II REPRESENTATIONS AND WARRANTIES OF SELLER AND
COMPANY ........................................................................................... 3

| Section 2.01 | Organization and Authority of Seller and Company; Enforceability | 3 |
| Section 2.02 | No Conflicts; Consents | 4 |
| Section 2.03 | Legal Proceedings | 4 |
| Section 2.04 | Financial Statements | 4 |
| Section 2.05 | Ownership of Membership Interests | 4 |
| Section 2.06 | Operating Agreement | 5 |
| Section 2.07 | Brokers | 5 |
| Section 2.08 | Non-foreign Status | 5 |

ARTICLE III REPRESENTATIONS AND WARRANTIES OF BUYER ...................... 5

| Section 3.01 | Organization and Authority of Buyer; Enforceability | 5 |
| Section 3.02 | No Conflicts; Consents | 5 |
| Section 3.03 | Investment Purpose | 6 |
| Section 3.04 | Brokers | 6 |
| Section 3.05 | Legal Proceedings | 6 |

ARTICLE IV CLOSING DELIVERIES ....................................................................... 6

i

26931012v.5

EXECUTION VERSION

Section 4.01   Seller's Deliveries ........................................................................ 6

Section 4.02   Buyer's Deliveries ........................................................................ 7

ARTICLE V TAX MATTERS ........................................................................ 7

Section 5.01   Allocation of Company Income and Loss ...................................... 7

ARTICLE VI INDEMNIFICATION AND RELEASE OF CLAIMS ............................. 8

Section 6.01   Survival of Representations and Covenants .................................. 8

Section 6.02   Indemnification By Seller ............................................................ 8

Section 6.03   Indemnification By Buyer, the Company and MicroClean ............... 8

Section 6.04   Indemnification Procedures ......................................................... 9

Section 6.05   Payments .................................................................................. 9

Section 6.06   Tax Treatment of Indemnification Payments .................................. 9

Section 6.07   Effect of Investigation ................................................................ 9

Section 6.08   Cumulative Remedies .................................................................. 9

Section 6.09   RELEASE ................................................................................ 10

ARTICLE VII MISCELLANEOUS .................................................................. 10

Section 7.01   Expenses ................................................................................ 10

Section 7.02   Further Assurances .................................................................. 10

Section 7.03   Notices .................................................................................. 11

Section 7.04   Headings ................................................................................ 11

Section 7.05   Severability ............................................................................ 11

Section 7.06   Entire Agreement .................................................................... 12

Section 7.07   Successors and Assigns ............................................................ 12

Section 7.08   No Third-Party Beneficiaries ...................................................... 12

Section 7.09   Amendment and Modification .................................................... 12

Section 7.10   Waiver .................................................................................... 12

Section 7.11   Governing Law ........................................................................ 12

Section 7.12   Specific Performance ................................................................ 13

Section 7.13   Counterparts ........................................................................... 13

Section 7.14   Survival .................................................................................. 13

Section 7.15   Recitals and Exhibits ................................................................ 13

ii

26931012v.5

EXECUTION VERSION

Section 7.16    Confidentiality ................................................................................................. 14
Section 7.17    Smith Consent.................................................................................................. 14
Section 7.18    Patent Prosecution and Maintenance ............................................................. 14

iii

26931012v.5

## MEMBERSHIP INTEREST PURCHASE AGREEMENT

This MEMBERSHIP INTEREST PURCHASE AGREEMENT (herein, together with the Schedules and Exhibits attached hereto, referred to as the "**Agreement**"), dated as of August 25, 2016, is by and among Randy LeBoeuf, an individual ("**Seller**"), Loren L. Hatle, an individual ("**Buyer**"), Rocky Smith, an individual ("**Smith**"), Clean Metal Technologies, L.L.C., a Louisiana limited liability company ("**Company**") and MicroClean Metals, LLC, a Texas limited liability company ("**MicroClean**"). The Seller, Buyer, Smith, Company and MicroClean are hereinafter together referred to as the "**Parties**" and each individually as a "**Party**."

### RECITALS

**WHEREAS**, Buyer owns 49 Class A Company Units and 86 Class B Company Units, and Mr. Rocky Smith ("**Smith**") owns 45 Class B Company Units;

**WHEREAS**, Seller owns 51 Class A Company Units and 69 Class B Company Units (the "**Membership Interests**");

**WHEREAS**, the Company's scope of business is the manufacturing and sale of anti-corrosive products to several industries, including but not limited to the oil and gas industry, the automotive industry, the cruise line industry and others (the "**Business**");

**WHEREAS**, Seller wishes to sell to Buyer, and Buyer wishes to purchase from Seller, the Membership Interests, subject to the terms and conditions set forth herein;

**WHEREAS**, to finance the transaction described herein, Buyer has caused MicroClean to be formed, and revenue from MicroClean will be used to fund the Deferred Purchase Price Consideration and Deferred Loan Repayment (as defined below in Sections 1.02 and 1.04, respectively);

**WHEREAS**, Smith has consented to the sale and purchase of the Membership Interests;

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

### ARTICLE I
#### PURCHASE AND SALE

**Section 1.01   Purchase and Sale.** Subject to the terms and conditions set forth herein, at the Closing (as defined herein), Seller shall sell to Buyer, and Buyer shall purchase from Seller, all of Seller's right, title and interest in and to the Membership Interests, free and clear of any mortgage, pledge, lien, charge, security interest, claim or other encumbrance ("**Encumbrance**"), for the consideration specified in **Section 1.02**.

26931012v.5

EXECUTION VERSION

**Section 1.02  Purchase Price.**  The aggregate purchase price for the Membership Interests shall be Eight Hundred Eighty Two Thousand U.S. Dollars ($882,000.00) (the **"Purchase Price"**). The Buyer shall pay the Purchase Price to Seller subject to the terms and conditions set forth herein.

(a)  **Deferred Purchase Price Consideration.**  The $882,000.00 of the Purchase Price shall be paid by Buyer to Seller as follows: (a) $82,000.00 within three (3) months after Closing in a lump sum and (b) within eighteen (18) months after Closing, in six (6) principal installment payments of $133,333.34, plus accrued interest every three months until the balance is fully paid (the "Deferred Purchase Price Consideration"), substantially in the form of the Promissory Note attached hereto as EXHIBIT A. The Deferred Purchase Price Consideration shall bear an interest rate at the Bank Prime Rate, as quoted in the *Wall Street Journal*, as of each payment due date, adjusted quarterly and compounded annually, but in no event shall the interest rate exceed five percent (5%) per annum.

**Section 1.03  Repayment of Third Party Debt.**  At the Closing, Buyer shall provide to the Company funds in the amount of $100,000.00 as working capital to be immediately used to pay certain Company debt owed to third parties ("Third Party Debt"). This shall be deemed a Capital Contribution, but it shall not change the membership percentage interest of any member. This Third Party Debt is listed on Schedule 1.03 attached hereto and the Parties acknowledge that this debt is valid and outstanding Company debt. In addition to this $100,000, the Company has $10,197 in its checking account to also apply to the payment of Third Party Debt.

**Section 1.04  Deferred Loan Repayment.**  The Company shall repay Seller the loan owed by the Company in the amount of $300,000.00 ("Deferred Loan Repayment") in six (6) principal installments of $50,000.00 each, plus accrued interest every month, substantially in the form of the Promissory Note attached hereto as EXHIBIT B. The Deferred Loan Repayment shall bear an interest rate at the Bank Prime Rate, as quoted in the Wall Street Journal, as of each payment due date, adjusted quarterly and compounded annually, but in no event shall the interest rate exceed five percent (5%) per annum. The Parties acknowledge that this debt is valid and outstanding Company debt.

**Section 1.05  Subject Patent.**  The Deferred Purchase Price Consideration and the Deferred Loan Repayment shall be secured by that certain (1) U.S. Patent Application Serial Number 15/012,618 filed on February 1, 2016 entitled "Methods For Removal of Reacting Sites On Metal Surfaces And Application Of A Nanotube Containing Protective Coating" and in addition any other Patent Rights of Clean Metal owned as of the Closing; as well as any continuations, continuations-in-part, division applications and any re-examination or reissues thereof, and any foreign counterparts thereto; and (a) any invention or discovery which is or was conceived and/or reduced to practice by Buyer, individually or jointly with others, at any time prior to or while employed by the Company and for a period of one year after the termination of the employment by Buyer pursuant to a written assignment set forth in Section 7(l) of the Employment, Non-Disclosure, Non-Compete, and Non-Solicitation Agreement executed on April 2, 2015,

2

26931012v.5

EXECUTION VERSION

but made effective  March 16, 2015 by and between Buyer and the Company, and (b) all rights under the License Agreement (the "**Subject Patent Rights**"), substantially in the form of a Security Agreement executed by and between Seller and Buyer, attached hereto as **EXHIBIT C** (the "Security Agreement").

**Section 1.06   License Agreement**.  At Closing, the Company shall execute and deliver a mutually agreeable exclusive license agreement (the "**License Agreement**") to MicroClean substantially in the form attached hereto as **EXHIBIT D**.   The License Agreement shall allow MicroClean to utilize the Subject Patent to generate the requisite revenue to fund the Deferred Purchase Price Consideration and Deferred Loan Repayment. The License Agreement shall be inferior in rank and subordinate to the Security Agreement.

**Section 1.07   Closing**.  The closing of the transactions contemplated by this Agreement (the "**Closing**") shall take place virtually, on August 25, 2016, or such other time, date or place as Seller and Buyer may mutually agree upon in writing (the "**Closing Date**"). The consummation of the transactions contemplated by this Agreement shall be deemed to occur at 12:01 a.m. on the Closing Date.

**Section 1.08   Transfer Taxes**.  Seller shall pay, and shall reimburse Buyer for, any sales, use or transfer taxes, documentary charges, recording fees or similar taxes, charges, fees or expenses, if any, that become due and payable as a result of the transactions contemplated by this Agreement.  Notwithstanding the foregoing, the Parties agree that each Party shall sign appropriate documentation in order for any profits and losses attributable to the Company's operations in 2016 to be allocated to Seller up and until the Closing Date.

**Section 1.09   Withholding Taxes**.  Buyer and the Company shall be entitled to deduct and withhold from the Purchase Price all taxes that Buyer and the Company may be required to deduct and withhold under any provision of tax law. All such withheld amounts shall be treated as delivered to Seller hereunder.

## ARTICLE II
### REPRESENTATIONS AND WARRANTIES OF SELLER AND COMPANY

Seller represents and warrants to Buyer that to Seller's knowledge the statements contained in this **Article II** are true and correct as of the date hereof. For purposes of this **Article II**, "Seller's knowledge," "knowledge of Seller" and any similar phrases shall mean the actual knowledge of Seller.

**Section 2.01   Organization and Authority of Seller and Company; Enforceability**.  Seller is an individual.  The Company is a limited liability company organized under the laws of the State of Louisiana, and is in good standing.  Seller and the Company have full corporate power and authority to enter into this Agreement and the documents to be delivered hereunder, to carry out their obligations hereunder and to consummate the transactions contemplated hereby. This Agreement and the documents to

3

26931012v.5

EXECUTION VERSION

be delivered hereunder have been duly executed and delivered by Seller and the Company (assuming due authorization, execution and delivery by Buyer and Smith), and this Agreement and the documents to be delivered hereunder constitute legal, valid and binding obligations of Seller, enforceable against Seller in accordance with their respective terms.

Section 2.02   No Conflicts; Consents.   Except as set forth in Schedule 2.02 the execution, delivery and performance by Seller and the Company of this Agreement and the documents to be delivered hereunder, and the consummation of the transactions contemplated hereby, do not and will not: (a) violate or conflict with the certificate of formation, Operating agreement (as defined herein) or other organizational documents of the Company; (b) violate or conflict with any judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Seller; (c) conflict with, or result in (with or without notice or lapse of time or both) any violation of, or default under, or give rise to a right of termination, acceleration or modification of any obligation or loss of any benefit under any contract or other instrument to which Seller is a party; (d) result in any violation, conflict with or constitute a default under the Company's organizational documents or the Operating Agreement of the Company, dated March 16, 2015 ("**Operating Agreement**"); or (e) result in the creation or imposition of any Encumbrance on the Membership Interests. Except as disclosed in **Section 2.02** of the Disclosure Schedules, no consent, approval, waiver or authorization is required to be obtained by Seller from any person or entity (including any governmental authority) in connection with the execution, delivery and performance by Seller of this Agreement and the consummation of the transactions contemplated hereby.

Section 2.03   Legal Proceedings.   There is no claim, action, suit, proceeding or governmental investigation ("**Action**") of any nature pending or, to Seller's knowledge, threatened against or by Seller (a) relating to or affecting the Membership Interests; or (b) that challenges or seeks to prevent, enjoin or otherwise delay the transactions contemplated by this Agreement. No event has occurred or circumstances exist that may give rise to, or serve as a basis for, any such Action.

Section 2.04   Financial Statements.   True, correct and complete copies of the unaudited balance sheet and statements of operations, members' equity as historically prepared by the Company as of and for the fiscal year ended 2015 and the Company's unaudited balance sheet and statements of operations, members' equity as of and for the seven months ended July 31, 2016 (collectively, the "**Financial Statements**") are attached as Schedule 2.04.

Section 2.05   Ownership of Membership Interests.

(a)      Seller is the sole legal, beneficial, record and equitable owner of the Membership Interests, free and clear of all Encumbrances whatsoever.

(b)      The Membership Interests were issued in compliance with applicable laws. The Membership Interests were not issued in violation of the organizational documents of the Company or any other agreement, arrangement or commitment to

4

26931012v.5

EXECUTION VERSION

which Seller or the Company is a party and are not subject to or in violation of any preemptive or similar rights of any Person.

      (c)    Other than the organizational documents of the Company, there are no voting trusts, proxies or other agreements or understandings in effect with respect to the voting or transfer of any of the Membership Interests.

      **Section 2.06   Operating Agreement**.   Attached hereto as **EXHIBIT E** is the Company's Operating Agreement, which agreement is in full force and effect and is the only agreement in effect with respect to the matters described therein.

      **Section 2.07   Brokers**.   No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Seller.

      **Section 2.08   Non-foreign Status**.   Seller is not a foreign person as such term is used in Treasury Regulation Section 1.1445-2.

### ARTICLE III
### REPRESENTATIONS AND WARRANTIES OF BUYER

      Buyer represents and warrants to Seller that, to the Buyer's knowledge the statements contained in this **Article III** are true and correct as of the date hereof. For purposes of this **Article III**, "Buyer's knowledge," "knowledge of Buyer" and any similar phrases shall mean the actual knowledge of Buyer, after due inquiry.

      **Section 3.01   Organization and Authority of Buyer; Enforceability**.   Buyer is an individual. Buyer has full corporate power and authority to enter into this Agreement and the documents to be delivered hereunder, to carry out his obligations hereunder and to consummate the transactions contemplated hereby. The execution, delivery and performance by Buyer of this Agreement and the documents to be delivered hereunder and the consummation of the transactions contemplated hereby have been duly authorized by all requisite corporate action on the part of Buyer. This Agreement and the documents to be delivered hereunder have been duly executed and delivered by Buyer, and (assuming due authorization, execution and delivery by Seller) this Agreement and the documents to be delivered hereunder constitute legal, valid and binding obligations of Buyer enforceable against Buyer in accordance with their respective terms.

      **Section 3.02   No Conflicts; Consents**.   The execution, delivery and performance by Buyer of this Agreement and the documents to be delivered hereunder, and the consummation of the transactions contemplated hereby, do not and will not violate or conflict with any judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Buyer. No consent, approval, waiver or authorization is required to be obtained by Buyer from any person or entity (including any governmental authority) in

5

26931012v.5

EXECUTION VERSION

connection with the execution, delivery and performance by Buyer of this Agreement and the consummation of the transactions contemplated hereby.

**Section 3.03  Investment Purpose.**  Buyer is acquiring the Membership Interests solely for its own account for investment purposes and not with a view to, or for offer or sale in connection with, any distribution thereof. Buyer acknowledges that the Membership Interests are not registered under the Securities Act of 1933, as amended, or any state securities laws, and that the Membership Interests may not be transferred or sold except pursuant to the registration provisions of the Securities Act of 1933, as amended or pursuant to an applicable exemption therefrom and subject to state securities laws and regulations, as applicable.

**Section 3.04  Brokers.**  No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Buyer.

**Section 3.05  Legal Proceedings.**  To Buyer's knowledge, there is no Action pending, or threatened against, or by Buyer or any Affiliate of Buyer that challenges or seeks to prevent, enjoin or otherwise delay the transactions contemplated by this Agreement.  To Buyer's knowledge, no event has occurred or circumstances exist that may give rise or serve as a basis for any such Action.

### ARTICLE IV
### CLOSING DELIVERIES

**Section 4.01  Seller's Deliveries.**  At the Closing, Seller shall deliver to Buyer the following (duly and fully executed, acknowledged and notarized as appropriate):

(a)   A counterpart to the Security Agreement duly and fully executed by Seller, Smith and the Company.

(b)   The License Agreement duly and fully executed by the Company.

(c)   A counterpart to the non-compete and non-solicitation agreement by and between Seller and the Company, duly and fully executed by Seller (the "**Non-compete and Non-Solicitation Agreement**"), attached hereto as EXHIBIT F.

(d)   A revised Members' Exhibit A to the Operating Agreement reflecting the Buyer's purchase of the Membership Interests and ownership interest in the Company.

(e)   A certificate, dated as of the Closing date, of Seller certifying as to the representations and warranties of Article II.

(f)   A certificate by a certifying official of the Company certifying as to (i) the resolutions of the board of managers and members (or equivalent managing body) of the Company, duly adopted and in effect, which authorize the execution, delivery and performance of this Agreement and the transactions contemplated hereby, and (ii) the

6

26931012v.5

EXECUTION VERSION

names and signatures of the Members of the Company authorized to sign this Agreement and the documents to be delivered hereunder.

(g)    A good standing certificate (or its equivalent) for the Company from the Secretary of State of the State of Louisiana.

(h)    Bill of Sale of Membership Interests.

(i)    such other customary instruments of transfer, filings or documents, in form and substance reasonably satisfactory to Buyer, as may be required to give effect to this Agreement and all other agreements, documents, instruments or certificates required to be delivered by Seller at or prior to the Closing pursuant to this Agreement.

**Section 4.02 Buyer's Deliveries.**  At the Closing, Buyer shall deliver the following to Seller (duly and fully executed, acknowledged and notarized as appropriate):

(a)    The Repayment of Third Party Debt.

(b)    A counterpart to the Security Agreement duly and fully executed by Buyer.

(c)    A promissory note payable to Seller regarding the Deferred Purchase Price Consideration, duly and fully executed by Buyer.

(d)    A promissory note payable to Seller regarding Deferred Loan Repayment payable, duly and fully executed by the Company.

(e)    A personal guaranty in favor of Seller by Buyer, as a guarantor.

(f)    A personal guaranty in favor of Seller by MicroClean, as a guarantor.

(g)    A personal guaranty in favor of Seller by the Company, as a guarantor.

(h)    Evidence of formation of MicroClean Metals, LLC, a Texas limited liability company

(i)    Tax documents per Section 5.01 below.

(j)    A resolutions of the members (or equivalent managing body) of MicroClean, duly adopted and in effect, which authorize the execution, delivery and performance of this Agreement and the transactions contemplated hereby, including the grant of MicroClean Guaranty.

**ARTICLE V**
**TAX MATTERS**

**Section 5.01 Allocation of Company Income and Loss.**  Section 1377 election: Seller, Buyer and Smith elect under IRC 1377 to terminate the taxable year of

7

26931012v.5

EXECUTION VERSION

the Company as of the Closing Date of this Agreement and to have IRC 1377 (a)(2) applie as if the 2016 taxable year consisted of two taxable years. The Parties agree that the Company and all Company's members shall file the election under Section 1377 as per Schedule 5.01, with the income tax return for the Company. At Closing, all Company's members shall execute appropriate documents.

## ARTICLE VI
### INDEMNIFICATION AND RELEASE OF CLAIMS

**Section 6.01  Survival  of  Representations  and  Covenants.**    All representations, warranties, covenants and agreements contained herein and all related rights to indemnification shall survive the Closing.

**Section 6.02  Indemnification By Seller.**    Subject  to  the  other  terms  and conditions of this **Article VI**, Seller shall defend, indemnify and hold harmless Buyer, MicroClean, and the Company, its affiliates and their respective members, managers, officers and employees from and against all claims, judgments, damages, liabilities, settlements, losses, costs and expenses, including attorneys' fees, other reasonable expense of litigation and disbursements (a "**Loss**" or "**Losses**"), arising from or relating to:

(a)    any inaccuracy in or breach of any of the representations or warranties of Seller contained in this Agreement or any document to be delivered hereunder; or

(b)    any breach or non-fulfillment of any covenant, agreement or obligation to be performed by Seller pursuant to this Agreement or any document to be delivered hereunder.

**Section 6.03  Indemnification By Buyer, the Company and MicroClean.** Subject to the other terms and conditions of this **Article VI**, Buyer, the Company and MicroClean shall defend, indemnify and hold harmless Seller from and against all Losses arising from or relating to:

(a)    any inaccuracy in or breach of any of the representations or warranties of Buyer contained in this Agreement or any document to be delivered hereunder; or

(b)    any breach or non-fulfillment of any covenant, agreement or obligation to be performed by Buyer pursuant to this Agreement or any document to be delivered hereunder.

(c)    any claims that may be asserted against Seller by anyone relating to the Subject Patent Rights, and any related intellectual property, including but not limited to any infringement claims, co-inventorship claims, ownership claims, unfair trade practice or unfair competition related to the Subject Patent Rights or relating to the Company and his ownership and activities for the Company, including claims raised by third parties that patents resulting from pledged intellectual property are invalid resulting from fraud on the patent office or anti-trust claims based on attempting to enforce fraudulently obtained patent including in pledged intellectual property.

8

26931012v.5

EXECUTION VERSION

**Section 6.04   Indemnification Procedures.**  Whenever any claim shall arise for indemnification hereunder, the Party entitled to indemnification (the "**Indemnified Party**") shall promptly provide written notice of such claim to the other Party (the "**Indemnifying Party**"). In connection with any claim giving rise to indemnity hereunder resulting from or arising out of any Action by a person or entity who is not a Party to this Agreement, the Indemnifying Party, at its sole cost and expense and upon written notice to the Indemnified Party, may assume the defense of any such Action with counsel reasonably satisfactory to the Indemnified Party. The Indemnified Party shall be entitled to participate in the defense of any such Action, with its counsel and at its own cost and expense. If the Indemnifying Party does not assume the defense of any such Action, the Indemnified Party may, but shall not be obligated to, defend against such Action in such manner as it may deem appropriate, including, but not limited to, settling such Action, after giving notice of it to the Indemnifying Party, on such terms as the Indemnified Party may deem appropriate and no action taken by the Indemnified Party in accordance with such defense and settlement shall relieve the Indemnifying Party of its indemnification obligations herein provided with respect to any damages resulting therefrom. The Indemnifying Party shall not settle any Action without the Indemnified Party's prior written consent (which consent shall not be unreasonably withheld or delayed).

**Section 6.05   Payments.**  Once a Loss is agreed to by the Indemnifying Party or finally adjudicated to be payable pursuant to this **Article VI**, the Indemnifying Party shall satisfy its obligations within fifteen (15) Business Days of such final, non-appealable adjudication by wire transfer of immediately available funds. The Parties hereto agree that should an Indemnifying Party not make full payment of any such obligations within such fifteen (15) Business Day period, any amount payable shall accrue interest from and including the date of agreement of the Indemnifying Party or final, non-appealable adjudication to the date such payment has been made at a rate per annum equal to five percent. Such interest shall be calculated daily on the basis of a 365 day year and the actual number of days elapsed.

**Section 6.06   Tax   Treatment   of   Indemnification   Payments.**   All indemnification payments made under this Agreement shall be treated by the Parties as an adjustment to the Purchase Price for Tax purposes, unless otherwise required by law.

**Section 6.07   Effect of Investigation.**  Buyer's right to indemnification or other remedy based on the representations, warranties, covenants and agreements of Seller contained herein will not be affected by any investigation conducted by Buyer with respect to, or any knowledge acquired by Buyer at any time, with respect to the accuracy or inaccuracy of or compliance with, any such representation, warranty, covenant or agreement, except for actual knowledge of Buyer prior to Closing.

**Section 6.08   Cumulative Remedies.**  The rights and remedies provided in this **Article VI** are cumulative and are in addition to and not in substitution for any other rights and remedies available at law or in equity or otherwise.

9

26931012v.5

EXECUTION VERSION

**Section 6.09   RELEASE**. THE PARTIES AGREE THAT, EFFECTIVE AS OF THE CLOSING DATE, EACH PARTY SHALL RELEASE ANY AND ALL KNOWN OR UNKNOWN CLAIMS THAT THE PARTIES MAY OR COULD HAVE AGAINST EACH OTHER FOR ANY ACTS, OMISSIONS, OR EVENTS THAT OCCURRED PRIOR TO THE CLOSING DATE. IN CONSIDERATION OF THE COVENANTS, AGREEMENTS AND UNDERTAKINGS OF THE PARTIES UNDER THIS AGREEMENT, EACH PARTY, ON BEHALF OF HIMSELF, ITSELF AND HIS/ITS RESPECTIVE PRESENT AND FORMER PARENTS, SUBSIDIARIES, AFFILIATES, OFFICERS, DIRECTORS, SHAREHOLDERS, MEMBERS, SUCCESSORS, AND ASSIGNS (COLLECTIVELY, "RELEASORS") HEREBY RELEASES, WAIVES, AND FOREVER DISCHARGES EACH OTHER PARTY AND HIS/ITS RESPECTIVE PRESENT AND FORMER, DIRECT AND INDIRECT, PARENTS, SUBSIDIARIES, AFFILIATES, EMPLOYEES, OFFICERS, DIRECTORS, SHAREHOLDERS, MEMBERS, AGENTS, REPRESENTATIVES, PERMITTED SUCCESSORS, AND PERMITTED ASSIGNS (COLLECTIVELY, "RELEASEES") OF AND FROM ANY AND ALL ACTIONS, CAUSES OF ACTION, SUITS, LOSSES, LIABILITIES, RIGHTS, DEBTS, DUES, SUMS OF MONEY, ACCOUNTS, RECKONINGS, OBLIGATIONS, COSTS, EXPENSES, LIENS, BONDS, BILLS, SPECIALTIES, COVENANTS, CONTRACTS, CONTROVERSIES, AGREEMENTS, PROMISES, VARIANCES, TRESPASSES, DAMAGES, JUDGMENTS, EXTENTS, EXECUTIONS, CLAIMS, AND DEMANDS, OF EVERY KIND AND NATURE WHATSOEVER, WHETHER NOW KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, SUSPECTED OR UNSUSPECTED, IN LAW, OR EQUITY, UNDER ANY THEORY OF LAW OR ANY REMEDY (COLLECTIVELY, "CLAIMS"), WHICH ANY OF SUCH RELEASORS EVER HAD, NOW HAVE, OR HEREAFTER CAN, SHALL, OR MAY HAVE AGAINST ANY OF SUCH RELEASEES FOR, UPON, OR BY REASON OF ANY MATTER, CAUSE, OR THING WHATSOEVER FROM THE BEGINNING OF TIME THROUGH THE DATE OF THIS AGREEMENT, EXCEPT FOR ANY SURVIVING OBLIGATIONS UNDER THIS AGREEMENT AND CLAIMS RELATING TO RIGHTS AND OBLIGATIONS PRESERVED BY, CREATED BY OR OTHERWISE ARISING OUT OF THIS AGREEMENT. THIS RELEASE SHALL BE EFFECTIVE UPON CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT.

## ARTICLE VII
### MISCELLANEOUS

**Section 7.01   Expenses**. All costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the Party incurring such costs and expenses.

**Section 7.02   Further Assurances**. Following the Closing, each of the Parties hereto shall, and shall cause their respective Affiliates to, execute and deliver such additional documents, instruments, conveyances and assurances and take such further

10

26931012v.5

EXECUTION VERSION

actions as may be reasonably required to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement.

Section 7.03   Notices. All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next Business Day if sent after normal business hours of the recipient or (d) on the [third] day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective Parties at the following addresses (or at such other address for a Party as shall be specified in a notice given in accordance with this Section 7.03):

| | |
|---|---|
| If to Seller: | Randy LeBoeuf |
| | 139 Bocage Drive |
| | Houma, Louisiana 70360 |
| | |
| with a copy to: | Duval, Funderburk, Sundbery, Lovell & Watkins |
| | Attn: Sidney Sundbery |
| | 101 Wilson Avenue |
| | Houma, LA 70364-3137 |
| | sid@duvallawfirm.com |
| | |
| If to Buyer: | Loren L. Hatle |
| | 21122 Grandin Wood Ct. |
| | Humble, Texas 77338 |
| | |
| with a copy to: | Seyfarth Shaw LLP |
| | Attn: Cleve J. Glenn |
| | 700 Milam Street, Suite 1400 |
| | Houston, Texas 77002 |
| | cglenn@seyfarth.com |

Section 7.04   Headings. The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

Section 7.05   Severability. If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal or unenforceable, the Parties hereto shall negotiate in good faith to modify the Agreement so as to effect the

11

26931012v.5

EXECUTION VERSION

original intent of the Parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

**Section 7.06   Entire Agreement.**   This Agreement and the documents to be delivered hereunder, including the above Recitals and attached Exhibits, constitute the sole and entire agreement of the Parties to this Agreement with respect to the subject matter contained herein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter. In the event of any inconsistency between the statements in the body of this Agreement and those in documents to be delivered hereunder, the Exhibits and Disclosure Schedules (other than an exception expressly set forth as such in the Disclosure Schedules), the statements in the body of this Agreement will control.

**Section 7.07   Successors and Assigns.**   This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and permitted assigns. Neither Party may assign its rights or obligations hereunder without the prior written consent of the other Party, which consent shall not be unreasonably withheld or delayed. No assignment shall relieve the assigning Party of any of its obligations hereunder.

**Section 7.08   No Third-Party Beneficiaries.**   Except as provided in Article VI, this Agreement is for the sole benefit of the Parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

**Section 7.09   Amendment and Modification.**   This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each Party hereto.

**Section 7.10   Waiver.**   No waiver by any Party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the Party so waiving. No waiver by any Party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

**Section 7.11   Governing Law.**

(a)   <u>Party Proceedings</u>. The Parties agree that the exclusive jurisdiction and venue to resolve any disputes *related solely* to this Agreement (and ancillary documents, including the promissory notes, the Security Agreement, any guarantees and any indemnities) shall be exclusively held

12

26931012v.5

EXECUTION VERSION

and prosecuted in the 32nd Judicial District Court, Terrebonne Parish, Louisiana. Likewise, the governing law for any disputes *related solely* to this Agreement (and ancillary documents, including the promissory notes, the Security Agreement, any guarantees and any indemnities) shall be Louisiana without giving effect to any choice or conflict of law provision or rule (whether of the State of Louisiana or any other jurisdiction) that could cause the application of laws of any jurisdiction other than those of the State of Louisiana.

(b)     <u>Third Party Proceedings</u>.  The Parties agree that the exclusive jurisdiction and venue for any legal proceedings commenced by third parties (or commenced by Seller, the Company or MicroClean against any third parties) related in any manner to this Agreement (and ancillary documents, including the promissory notes, the Security Agreement, any guarantees and any indemnities) shall be Harris County, Texas. Likewise, the governing law for any legal proceedings commenced by third parties (or commenced by Seller, the Company or MicroClean against any third parties) related in any manner to this Agreement (and ancillary documents, including the promissory notes, the Security Agreement, any guarantees and any indemnities) shall be Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) that could cause the application of laws of any jurisdiction other than those of the State of Texas.

**Section 7.12   Specific Performance.**  The Parties agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled at law or in equity. Each Party hereto (i) agrees that it shall not oppose the granting of such specific performance or relief and (ii) hereby irrevocably waives any requirements for the security or posting of any bond in connection with such relief.

**Section 7.13   Counterparts.**  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

**Section 7.14   Survival.**  Articles II, III, VI and VII of this Agreement, and Exhibits A, B, C, D, E and F, and Schedule 5.01 of this Agreement shall survive any expiration or termination of this Agreement.

**Section 7.15   Recital and Exhibits.**  The above Recitals and attached Exhibits are incorporated and made a material part of this Agreement.

13

26931012v.5

EXECUTION VERSION

**Section 7.16   Confidentiality**.   From and after the Closing, Seller and Smith, each individually, shall use his/its reasonable best efforts to hold, or cause their respective representatives to hold, in confidence any and all information, whether written or oral, concerning the Company, MicroClean and/or this Agreement, except to the extent that Seller can show that such information (a) is generally available to and known by the public through no fault of Seller or Smith, any of its their respective representatives; or (b) is lawfully acquired by Seller or Smith, or any their respective Representatives, from and after the Closing from sources which are not prohibited from disclosing such information by a legal, contractual or fiduciary obligation. If Seller or Smith, or any of their respective representatives are compelled to disclose any information by judicial or administrative process or by other requirements of law, Seller and Smith shall promptly notify Buyer in writing and shall disclose only that portion of such information which Seller and Smith are advised by their counsel in writing is legally required to be disclosed, provided that Seller and Smith shall use reasonable best efforts to cooperate with Buyer, Company and MicroClean should they elect at their expense to obtain an appropriate protective order or other reasonable assurance that confidential treatment will be accorded such information.  In addition, each Party agrees that following Closing, he/it shall not make any derogatory comments to anyone concerning any other Party to this Agreement.

**Section 7.17   Smith Consent**.  Smith consents to the terms and conditions of this Agreement.

**Section 7.18   Patent Prosecution and Maintenance**.   Company, Buyer and MicroClean, at their expense, shall prosecute all pending patent applications relating to the Subject Patents, including, but not limited to the 618 Application and any and all, continuations, continuations-in-part, divisionals, reissues and foreign counterparts thereof and shall maintain any Subject Patents, including, among other things, the payment of maintenance fees that become due.  This obligation shall remain until the Deferred Purchase Price Consideration and Deferred Loan Repayment are paid in full.

[SIGNATURE PAGE FOLLOWS]

14

26931012v.5

EXECUTION VERSION

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**SELLER:**

_Randy C. LeBouef_
Randy LeBoeuf, Individually

**BUYER:**

_____
Loren L. Hatle, Individually

**GUARANTORS:**

**MicroClean Metals, LLC**

By:_____
Name: _____
Title: _____

**Clean Metal Technologies, L.L.C.**

By:_____
Name: _____
Title: _____

**CONSENTING MEMBER:**

_____
Rocky Smith, Individually

15

26931012v.5

EXECUTION VERSION

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**SELLER:**

_____
Randy LeBoeuf, Individually

**BUYER:**

_____
Loren L. Hatle, Individually

**GUARANTORS:**

**MicroClean Metals, LLC**

By: _____
Name: Clifford Wright Jr.
Title: President & VCEO

**Clean Metal Technologies, L.L.C.**

By: _____
Name: Loren L. Hatle
Title: Class A & Class B Member

**CONSENTING MEMBER:**

_____
Rocky Smith, Individually

15

26931012v.5

DocuSign Envelope ID: 91637273-4017-4E6D-83EE-847D0CC6221F

EXECUTION VERSION

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**SELLER:**

_____

Randy LeBoeuf, Individually

**BUYER:**

Loren L. Hatle, Individually

**GUARANTORS:**

**MicroClean Metals, LLC**

By: _____

Name: Cliff Wright Jr.

Title: President & CEO

**Clean Metal Technologies, L.L.C.**

By: _____

Name: Loren L. Hatle

Title: Class A & Class B Member

**CONSENTING MEMBER:**

Rocky Smith, Individually

15

**EXHIBIT A**
Form of Promissory Note
for the
Deferred Purchase Price Consideration

26931012v.5

## DEFERRED PURCHASE PRICE CONSIDERATION NOTE

$882,000.00                                                                      August 25, 2016

FOR VALUE RECEIVED, the undersigned, jointly, severally and in solido, promise to pay

to the order of RANDY P. LeBOEUF ("PAYEE"), his successors or assigns, at Houma, Louisiana,

or at such other place as the holder of this Note may from time to time designate in writing, in lawful

money of the United States of America, the principal sum of EIGHT HUNDRED EIGHTY-TWO

THOUSAND AND NO/100 ($882,000.00) DOLLARS, plus interest per annum until paid in full at

the rate of the Bank Prime Rate as quoted in the Wall Street Journal on each installment due date.

Such interest shall in no event exceed five percent (5%) per annum.

This note shall be repayable as follows:

1.      A principal payment of Eighty-two Thousand and No/100 ($82,000.00) Dollars plus

accrued interest which shall not exceed five (5%) percent per annum, payable on November 25,

2016.

2.      Six (6) consecutive quarterly payments of principal in the amount of One Hundred

Thirty-Three Thousand Three Hundred Thirty-Three And 34/100 ($133,333.34) Dollars each, plus

accrued interest which shall not exceed five percent (5%) per annum, commencing on the 25th day of

November, 2016 and continuing on the same day of each third month thereafter until paid in full.

Each of the following constitutes an event of default ("Event of Default") under this Note:

The Maker hereof fails to make any payment when due under this Note; Maker or any guarantor fails

to comply with any terms or conditions or defaults under, any security agreement, instrument,

document, guaranty or other agreement that may directly or indirectly secure repayment of this Note;

bankruptcy, insolvency, dissolution or appointment of a liquidator, reorganization or similar proceedings are brought by or against Maker or any guarantor; death of Maker; or Clean Metal Technologies, L.L.C. defaults on the $300,000 Note it signed as maker in favor of Randy P. LeBoeuf as Payee on August 25, 2016.

It is expressly agreed that time is of the essence, and in the event of the occurrence of any Event of Default as described above, or in the event of failure of Maker to perform and comply with any and all of the other covenants, terms and provisions of this Note or of any instrument now or hereafter securing the indebtedness evidenced hereby, then in any of said events the principal sum and any other sums required to be paid by this Note or by any such instrument, together with all unpaid interest, shall be at once due and payable at the option of the holder hereof, his successors or assigns, and shall be collectible without further notice. Any failure to exercise said option or any other applicable rights shall not constitute a waiver of the right to exercise the same at any other time.

If this Note is placed in the hands of an attorney for any reason to enforce collection, or if this Note is collected by legal proceedings or through the probate or bankruptcy courts, or under any state insolvency proceeding, or under foreclosure proceedings under any instrument securing this Note, then all costs and the fees of the attorney who may be so employed, which fees are hereby fixed at twenty-five (25%) percent of the amount then due and exigible, plus costs and expenses shall be added thereto and be collectible by the holder hereof.

Any and all homestead and exemption laws and rights, including any valuation or appraisement rights, available to any of the undersigned pursuant to the Constitution or laws of any state, territory or jurisdiction, or of the United States of America, against the collection of this

indebtedness or any renewal thereof, or against the enforcement of any lien or assignment securing such indebtedness, are hereby expressly waived.

The makers, endorsers, guarantors and other parties secondarily liable upon this Note hereby severally waive demand, presentment for payment, notice of dishonor and protest, and consent that the maturity hereof may be extended without notice and expressly agree jointly and severally to remain and continue bound for the payment of the principal and interest provided for by the terms of this Note notwithstanding any extension or extensions of the time of, or for the payment of said principal or interest, or any change or changes in the amount or amounts agreed to be paid under and by virtue of the obligation to pay provided for in this Note, or any change or changes by way of release or surrender of any property or rights to property held as security for this Note. They waive all and every kind of notice of such extension or extensions, change or changes and agree that the same may be made without the joinder of any of the Makers, the endorsers, guarantors, or other parties secondarily liable upon, this Note.

This Note and the indebtedness represented thereby shall be construed pursuant to the laws of the State of LOUISIANA, without regard to its conflicts of laws provision.

The Maker hereof shall have the right to prepay the indebtedness evidenced by this Note, in whole or in part, at any time without penalty.

Any action or proceedings pertaining to this Note, the underlying obligations, including but not limited to the enforcement or collection hereof, and any actions to enforce any security securing this Note shall be brought exclusively in the 32nd Judicial District Court, Terrebonne Parish, Louisiana. The Maker expressly consents to the personal jurisdiction and venue of that Court.

The Note is secured by: (1) Security Agreement dated August 25, 2016, executed by Randy

P. LeBoeuf as Secured Party, by Clean Metal Technologies, L.L.C. as Grantor and as Loren L. Hatle;

and (2) Commercial Guaranty dated August 25, 2016, executed by Clean Metal Technologies, L.L.C.

and MicroClean Metals, L.L.C. as Guarantors.

Any notice to the Maker required hereunder or under any applicable law shall be deemed

made and delivered 48 hours after posting in U.S. Mail by certified mail addressed to the following

address or such other address as Maker may hereafter designate in writing:

> Loren L. Hatle
> 21122 Grandin Wood Ct.
> Humble, Texas 77338

IN WITNESS WHEREOF, the undersigned have set their hands and affixed their seals, on

the day and year first above written.

LOREN L. HATLE, Maker

**Exhibit B**
Form of Promissory Note
for the
Deferred Loan Repayment

26931012v.5

## DEFERRED LOAN REPAYMENT NOTE

$300,000.00                                                    August 25, 2016

FOR VALUE RECEIVED, the undersigned, jointly, severally and in solido, promise to pay to the order of RANDY P. LeBOEUF ("PAYEE"), his successors or assigns, at Houma, Louisiana, or at such other place as the holder of this Note may from time to time designate in writing, in lawful money of the United States of America, the principal sum of THREE HUNDRED THOUSAND AND NO/100 ($300,000.00) DOLLARS, plus interest per annum until paid in full at the rate of the Bank Prime Rate as quoted in the Wall Street Journal on each installment due date.   Such interest shall in no event exceed five percent (5%) per annum.

This note shall be repayable in six (6) consecutive quarterly installments of principal in the amount of Fifty Thousand And 00/100 ($50,000.00) Dollars each, plus accrued interest  which shall not exceed five percent (5%) per annum, commencing on the 25th day of November, 2016 and continuing on the same day of each third month thereafter until paid in full.

Each of the following constitutes an event of default ("Event of  Default") under this Note: The Maker hereof fails to make any payment when due under this Note; Maker or any guarantor fails to comply with any terms or conditions or defaults under, any security agreement, instrument, document, guaranty or other agreement that may directly or indirectly secure repayment of this Note; bankruptcy, insolvency, dissolution or appointment of a liquidator, reorganization or similar proceedings are brought by or against Maker or any guarantor; death of Maker; or Loren L. Hatle defaults on the  $882,000 Note he signed as marker in favor of Randy P. LeBoeuf as Payee on August 25, 2016.

It is expressly agreed that time is of the essence, and in the event of the occurrence of any Event of Default as described above, or in the event of failure of Maker to perform and comply with any and all of the other covenants, terms and provisions of this Note or of any instrument now or hereafter securing the indebtedness evidenced hereby, then in any of said events the principal sum and any other sums required to be paid by this Note or by any such instrument, together with all unpaid interest, shall be at once due and payable at the option of the holder hereof, his successors or assigns, and shall be collectible without further notice. Any failure to exercise said option or any other applicable rights shall not constitute a waiver of the right to exercise the same at any other time.

If this Note is placed in the hands of an attorney for any reason to enforce collection, or if this Note is collected by legal proceedings or through the probate or bankruptcy courts, or under any state insolvency proceeding, or under foreclosure proceedings under any instrument securing this Note, then all costs and the fees of the attorney who may be so employed, which fees are hereby fixed at twenty-five (25%) percent of the amount then due and exigible, plus costs and expenses shall be added thereto and be collectible by the holder hereof.

Any and all homestead and exemption laws and rights, including any valuation or appraisement rights, available to any of the undersigned pursuant to the Constitution or laws of any state, territory or jurisdiction, or of the United States of America, against the collection of this indebtedness or any renewal thereof, or against the enforcement of any lien or assignment securing such indebtedness, are hereby expressly waived.

The makers, endorsers, guarantors and other parties secondarily liable upon this Note hereby severally waive demand, presentment for payment, notice of dishonor and protest, and consent that

the maturity hereof may be extended without notice and expressly agree jointly and severally to remain and continue bound for the payment of the principal and interest provided for by the terms of this Note notwithstanding any extension or extensions of the time of, or for the payment of said principal or interest, or any change or changes in the amount or amounts agreed to be paid under and by virtue of the obligation to pay provided for in this Note, or any change or changes by way of release or surrender of any property or rights to property held as security for this Note. They waive all and every kind of notice of such extension or extensions, change or changes and agree that the same may be made without the joinder of any of the Makers, the endorsers, guarantors, or other parties secondarily liable upon, this Note.

      This Note and the indebtedness represented thereby shall be construed pursuant to the laws of the State of LOUISIANA, without regard to its conflicts of laws provision.

      The Maker hereof shall have the right to prepay the indebtedness evidenced by this Note, in whole or in part, at any time without penalty.

      Any action or proceedings pertaining to this Note, the underlying obligations, including but not limited to the enforcement or collection hereof, and any actions to enforce any security securing this Note shall be brought exclusively in the 32nd Judicial District Court, Terrebonne Parish, Louisiana. The Maker expressly consents to the personal jurisdiction and venue of that Court.

      The Note is secured by (1) Security Agreement dated August 25, 2016, executed by Randy P. LeBoeuf as Secured Party, by Clean Metal Technologies, L.L.C. as Grantor and Debtor

      Any notice to the Maker required hereunder or under any applicable law shall be deemed made and delivered 48 hours after posting in U.S. Mail by certified mail addressed to the following address or such other address as Maker may hereafter designate in writing:

Loren L. Hatle
21122 Grandin Wood Ct.
Humble, Texas 77338

IN WITNESS WHEREOF, the undersigned have set their hands and affixed their seals, on

the day and year first above written.

CLEAN METAL TECHNOLOGIES, L.L.C.

By: _____

LOREN L. HATLE, Class A & Class B
Member