IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RANDY LEBOEUF** | § | **DOCKET 20-105** |
| | § | |
| **v.** | § | |
| | § | **JUDGE SUSIE MORGAN** |
| **LOREN L. HATLE, CLEAN METAL** | § | |
| **TECHNOLOGIES, LLC, and** | § | |
| **MICROCLEAN METALS, LLC** | § | **MAGISTRATE DANA DOUGLAS** |

## OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
## AND TO AWARD COSTS AND ATTORNEY'S FEES

MAY IT PLEASE THE COURT:

Defendant Loren L. Hatle opposes Plaintiff Randy LeBoeuf's Motion to Remand and to Award Costs and Attorney's Fees ("Motion to Remand") [Rec. Doc. 9]. LeBoeuf's sole basis for remand is the alleged applicability of forum selection clauses contained in the Membership Interest Purchase Agreement[1] and ancillary documents, specifically the Deferred Purchase Price Consideration Note,[2] Deferred Loan Repayment Note,[3] Security Agreement,[4] and second Security Agreement[5] (hereinafter collectively referred to as "the Contracts").[6] As explained below, the factors to be considered when evaluating the enforceability of a forum selection clause favor denying the Motion to Remand and retaining jurisdiction of this case.

## OVERVIEW

LeBeouf's Motion to Remand does not dispute the validity of this Court's jurisdiction pursuant to 28 U.S.C. §1332. Accordingly, there is no factual dispute that diversity jurisdiction exists. The sole issue is whether the forum selection clauses in the Contracts are enforceable

---

[1] Rec. Doc. 1-2, pages 21-41.
[2] Rec. Doc. 1-2, pages 43-46.
[3] Rec. Doc. 1-2, pages 48-51.
[4] Rec. Doc. 1-2, pages 53-67.
[5] Rec. Doc. 1-2, pages 68-82.
[6] Rec. Doc. 9, ¶3.

against Hatle and require this Court to remand the action back to state court in the 32nd Judicial District Court of the Parish of Terrebonne, Louisiana. Because the incorporation of the forum selection clauses into the Contracts was the product of fraud and was calculated to give LeBoeuf an unfair advantage, the provisions are not enforceable and should not be a factor in considering LeBoeuf's motion to remand. Because LeBoeuf's sole basis for remand is to enforce the forum selection clauses, his motion to remand should be denied.

## FACTUAL AND PROCEDURAL HISTORY

The Contracts made the basis of the Plaintiff's claims are the subject of a pending lawsuit filed by Hatle in Texas state court which, among other relief, seeks a declaratory judgment that the Contracts are void ab initio because Hatle's agreement was procured by fraud.[7] The factual background relevant to the formation of the Contracts, and the fraudulent activities of LeBoeuf and others relevant to the issue of remand, are set forth as follows:

In or around August 2010, Hatle, a Texas resident, discovered a method to remove contaminants and other corrosive material from concrete, metal, and other surfaces and protect such surfaces by applying coatings to protect degradation of these surfaces.[8] Hatle was introduced to LeBoeuf in early 2014 by Rocky Smith, who works for and owns a minority interest in LeBoeuf's company, Innovative Surface.[9] In January 2015, Hatle and LeBoeuf met with David Kiesel, a patent attorney, to discuss Hatle's discovery and the modifications that he made to it over the years.[10] Based on the technology as it then existed, Mr. Kiesel's firm filed a provisional

---

[7] In considering a motion to remand, the court may pierce the pleadings and consider "summary judgment-type evidence such as affidavits and deposition testimony." *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995). Accordingly, see Exhibit A, Declaration of Loren L. Hatle, and attached Exhibit 6, Plaintiff's Original Petition filed on December 11, 2019 in the matter captioned *Loren L. Hatle v. Clifford Wright, Jr., Berkley Research Group, LLC, Cleve J. Glenn, Seyfarth Shaw LLP, Microclean Metals, LLC, and Randy P. LeBoeuf*, Cause No. 2019-87343, at ¶97.
[8] Exhibit A, ¶1; Exhibit 6 to Exhibit A, ¶¶5, 12.
[9] Exhibit A, ¶2.
[10] Exhibit A, ¶3.

patent application for Hatle's invention on February 5, 2015, which was assigned U.S. Serial No. 62/112,530 ("530 provisional application").[11]

On February 27, 2015, LeBeouf formed Clean Metal Technologies, L.L.C. ("CMT") specifically to make use of Hatle's technology, as described in the 530 provisional application.[12] At the time of formation, LeBeouf was designated as the sole manager and as a member of CMT, and Hatle and Rocky Smith were listed as members.[13] In December 2015, Hatle assigned all of his interest in and rights to the inventions disclosed in the 530 provisional application to CMT in exchange for voting and non-voting membership interests in the company.[14] On February 1, 2016, U.S. patent application Serial No. 15/012,618 ("618 patent application") was filed that claimed priority to the 530 provisional application.[15] Subsequently, on July 24, 2018, the 618 patent application was granted as patent number 10030310 (the "310 Patent").[16]

Since CMT's inception, Hatle and Smith spent a great deal of time formulating product based on the technology disclosed in the 530 provisional application.[17] They did that out of the garage of Smith's home in Richmond, Texas and traveled to multiple places throughout Texas and Louisiana to pitch the product to potential customers.[18] Despite Smith and Hatle bringing in several prospects, LeBoeuf would never fund any of the projects.[19] As a result, CMT never got off of the ground.[20] The company never made a profit, never sold any product, and never had any customers.[21]

---

[11] Exhibit A, ¶3; Exhibit 6 to Exhibit A, ¶12.
[12] Exhibit A, ¶4; Exhibit 6 to Exhibit A, ¶13.
[13] Exhibit A, ¶4; Exhibit 6 to Exhibit A, ¶13.
[14] Exhibit A, ¶5; Exhibit 6 to Exhibit A, ¶13.
[15] Exhibit A, ¶6; Exhibit 6 to Exhibit A, ¶12.
[16] Exhibit A, ¶21; Exhibit 6 to Exhibit A, ¶13.
[17] Exhibit A, ¶7.
[18] Exhibit A, ¶7.
[19] Exhibit A, ¶7.
[20] Exhibit A, ¶8; Exhibit 6 to Exhibit A, ¶14.
[21] Exhibit A, ¶8; Exhibit 1 to Exhibit A.

Hatle first met Clifford Wright, a managing director with Berkeley Research Group, LLC ("BRG"), in December 2015, when a company that Hatle had an ownership interest in was going through bankruptcy.[22] Cleve Glenn, who was an attorney with K&L Gates at the time, was one of the lawyers representing Hatle's company in the bankruptcy proceeding.[23] Claims to the technology underlying Hatle's original August 2010 discovery were also at issue during the proceeding.[24] Wright, who Hatle had never met before and who was trying to insert himself into Hatle's legal representation, heard about and was privy to details of this technology.[25]

In early March 2016, Wright called Hatle unexpectedly.[26] Per Wright's urging, Hatle engaged BRG to provide consulting services on strategy for CMT membership and for launching world-wide product sales.[27] Wright was listed as the person who would lead consulting services, and assured Hatle that he would not have to pay him or BRG any consulting fees.[28] As part of this consulting relationship, Hatle shared the details of the technology in the 618 patent application with Wright and provided Wright with other confidential and proprietary information.[29]

In April 2016, shortly after Hatle engaged BRG, LeBeouf fired Hatle from CMT.[30] Wright contacted Glenn, Hatle's former bankruptcy attorney and then an associate with Seyfarth Shaw LLP.[31] Hatle later came to learn that without his knowledge or consent, Glenn contacted LeBoeuf and inquired about Hatle purchasing LeBoeuf's membership interest in CMT.[32] Hatle

---

[22] Exhibit A, ¶9.
[23] Exhibit A, ¶9.
[24] Exhibit A, ¶9.
[25] Exhibit A, ¶9.
[26] Exhibit A, ¶10.
[27] Exhibit A, ¶10; Exhibit 6 to Exhibit A, ¶14.
[28] Exhibit A, ¶10; Exhibit 6 to Exhibit A, ¶14.
[29] Exhibit A, ¶10; Exhibit 6 to Exhibit A, ¶14.
[30] Exhibit A, ¶11.
[31] Exhibit A, ¶11.
[32] Exhibit A, ¶11.

4

had no money and was struggling to cover his personal expenses, which was a well-known fact among all the parties, including LeBoeuf.[33]

At the same time Glenn was soliciting LeBoeuf over his CMT membership interests, Glenn formed MicroClean Metals, LLC ("MicroClean") on Wright's behalf.[34] MicroClean's certificate of filing with the Texas Secretary of State became effective on May 3, 2016 and listed Glenn as the company's initial registered agent.[35] MicroClean's company agreement listed Wright as the sole manager and member of the company, as well as its President and CEO.[36] Hatle had no initial ownership interest in MicroClean and was not involved in its formation, but was designated as the company's Chief Technical Officer.[37]

Wright then convinced Hatle to purchase LeBoeuf's membership interests in CMT and retained Glenn to represent Hatle in the transaction.[38] LeBoeuf, Wright, and Glenn knew that Hatle had no money to purchase LeBoeuf's membership interest in CMT.[39] Despite this knowledge and unbeknownst to Hatle, Wright and Glenn, who were supposed to be representing Hatle's interest, worked with LeBoeuf's attorney, Sid Sundbery, to structure a deal in such a way that Hatle took all of the risk and saw no reward.[40] Through this scheme, LeBoeuf, Wright, and Glenn planned to exploit Hatle's patent technology for their own financial gain and if their plan did not work, Hatle would be the party responsible for all of the liabilities.[41]

---

[33] Exhibit A, ¶11.
[34] Exhibit A, ¶12; Exhibit 6 to Exhibit A, ¶16.
[35] Exhibit A, ¶12; Exhibit 6 to Exhibit A, ¶16.
[36] Exhibit A, ¶12; Exhibit 6 to Exhibit A, ¶16.
[37] Exhibit A, ¶12; Exhibit 6 to Exhibit A, ¶16.
[38] Exhibit 6 to Exhibit A, ¶17.
[39] Exhibit A, ¶13.
[40] Exhibit A, ¶13; Exhibit 6 to Exhibit A, ¶17.
[41] Exhibit A, ¶13.

LeBoeuf, Wright, and Glenn colluded to set values for LeBoeuf's CMT membership interests at amounts that were wildly disproportionate to the actual value of CMT, a company that was not established and had yet to make a profit.[42]

On August 25, 2016, the closing date for the transaction to purchase the Plaintiff's membership interest in CMT, Hatle went to Glenn's office at Seyfarth and was presented with a multitude of documents to sign that he had not previously seen or been advised as to their meaning and effect.[43] Hatle asked Wright and Glenn multiple times about the $882,000 that Hatle was purportedly to pay to LeBoeuf for his CMT membership interest, but was constantly told not to worry about it.[44] Wright and Glenn knew that Hatle did not have the money to pay LeBoeuf even a fraction of the $882,000, a fact that Hatle continuously raised with Wright and Glenn. Wright, however, assured Hatle that he had a lot of experience developing businesses and making them profitable, which implied to Hatle that Wright was planning to grow CMT's business to pay LeBoeuf off on my behalf.[45] Knowing that Hatle did not understand the details or effects of the agreements or what he was agreeing to be bound by, Wright and Glenn pressured Hatle to sign the documents, in which Hatle personally guaranteed over $1.1 million and pledged the 618 patent application technology as collateral.[46]

Hatle was not aware that there were any forum selection or venue provisions in the purchase agreement with LeBoeuf or in any of the other documents that he signed.[47] These provisions, along with others, were never explained to him by Glenn or Wright.[48] It has become clear over time, however, that LeBeouf deliberately included the forum selection clauses in the

---

[42] Exhibit A, ¶8; Exhibit 1 and Exhibit 6 to Exhibit A, ¶18.
[43] Exhibit A, ¶14; Exhibit 6 to Exhibit A, ¶18.
[44] Exhibit A, ¶14.
[45] Exhibit A, ¶14.
[46] Exhibit A, ¶14; Exhibit 6 to Exhibit A, ¶18.
[47] Exhibit A, ¶15.
[48] Exhibit A, ¶15.

agreements because he knew Hatle would default under the agreements.[49] LeBoeuf engineered the transaction to render litigation inevitable and allow himself to sue in Terrebonne Parish, where he lives and works, to gain control over Hatle's technology.[50] LeBoeuf gave Wright time to see if he could make money off of Hatle's patent technology through MicroClean Metals and pay LeBoeuf the purchase price he, Wright, and Glenn came up with for LeBoeuf's CMT membership interest.[51] If it did not work out (which it didn't), LeBoeuf always had the option to sue Hatle in Terrebonne Parish, where LeBoeuf lives and works, to gain control over the technology.

Hatle learned of the scheme among LeBoeuf, Wright, and Glenn after he ran into LeBoeuf at a trade show in New Orleans, Louisiana in early April 2017.[52] There, LeBoeuf told Hatle that he just threw out the $882,000 number for his membership interest in CMT and that Wright recommended to the Plaintiff that he charge more—in the $1 million range—in order to show investors that the company was worth more than it really was.[53] Upon returning home from the trade show, Hatle wrote a letter to Wright and Glenn letting them know what he learned from LeBoeuf.[54] On April 24, 2017, Hatle sent an email to Wright and Glenn announcing his resignation from MicroClean Metals, which at this time had the exclusive rights to the 618 patent application and the technology described therein.[55] In a series of email exchanges, Wright told Hatle that "Randy wanted and took your guarantee knowing you could not make the debt whole, he wanted your commitment, Randy knew money had come into MicroClean and it was MicroClean that was actually acquiring his controlling CMT shares."[56]

---

[49] Exhibit A, ¶15.
[50] Exhibit A, ¶15.
[51] Exhibit A, ¶15.
[52] Exhibit A, ¶16.
[53] Exhibit A, ¶16.
[54] Exhibit A, ¶17, and attached Exhibit 2.
[55] Exhibit A, ¶18, and attached Exhibit 3.
[56] Exhibit A, ¶18, and attached Exhibit 3, at p. 3.

In September or October 2017, Hatle met with LeBoeuf at Sid Sundbery's office with the goal of trying to restructure the deal involving Hatle's purchase of LeBoeuf's CMT membership interest.[57] At that meeting, in front of his attorney, Sundbery, LeBoeuf admitted to Hatle that he knew Hatle could not pay for his membership interest in CMT and that LeBoeuf knew he would never get the money.[58]

For more than three years since Hatle signed the purchase contract and related documents, LeBoeuf never asked him for payment under the Contracts.[59] Even when Hatle saw LeBoeuf at the New Orleans trade show in early April 2017 and again in Sundbery's office in September or October 2017, LeBoeuf never demanded the payments that Hatle supposedly owes him under the Contracts.[60]

Hatle filed a provisional application for new technology that he invented separate and independent from his time with CMT in or around March, 2019.[61] In early November 2019, Hatle received a letter via certified mail from Darryl Landwehr stating that he represents LeBoeuf and demanding payment of the $882,000 plus interest for LeBoeuf's membership interest and the $300,000 plus interest owed by CMT.[62] Shortly thereafter, Hatle received an email from J. Morgan Dixon attaching a letter that instructed Hatle to sign an inventor's declaration for U.S. patent application Serial No. 16/549,725 (the "725 patent application") that CMT allegedly filed listing Hatle as the inventor.[63] Mr. Dixon is an attorney with the same law firm of David Kiesel, who LeBoeuf retained to file the 530 provisional application and the 618 patent application on Hatle's

---

[57] Exhibit A, ¶19.
[58] Exhibit A, ¶19.
[59] Exhibit A, ¶21.
[60] Exhibit A, ¶21.
[61] Exhibit A, ¶22.
[62] Exhibit A, ¶22, and attached Exhibit 4.
[63] Exhibit A, ¶22, and attached Exhibit 5.

behalf.[64] The 725 patent application attempts to claim the new technology that Hatle invented, which has nothing to do with the technology in the 618 patent application that resulted in the 310 patent.[65] LeBoeuf learned of Hatle's new provisional patent application and, as a result, retained the Landwehr Law Firm to send Hatle the demand letter and directed Mr. Kiesel's firm to draft the 725 patent application and request that Hatle sign the inventor's declaration.[66]

After receiving the demand letter from Landwehr and the 725 patent application letter from Dixon, Hatle retained counsel to file a lawsuit against LeBoeuf, Wright, and Glenn and their respective companies in state court in Harris County, Texas for the fraudulent scheme committed against him.[67] At the time of filing that suit, Hatle was not aware of and had not been served with this lawsuit.[68]

In short, LeBoeuf, Wright, and Glenn conspired to procure Hatle's signature to the Contracts and subsequent agreements by fraud, in a concerted effort to strip Hatle of all rights and control over his invention. Knowing that Hatle could not afford the purchase price or any of the other cash outlays required under the Contracts, LeBoeuf, Wright and Glenn fraudulently constructed the Contracts to bind Hatle to obligations that he could not possibly fulfill, making litigation inevitable.[69] LeBoeuf purposely incorporated the forum selection clauses into the Contracts so that he would have home court and an unfair advantage over Hatle not *if*, but *when* he sued to enforce his rights under the Contracts. In fact, the present suit was filed in concert with LeBoeuf's current attempt to obtain ownership over Hatle's new patent technology.[70]

---

[64] Exhibit A, ¶22.
[65] Exhibit A, ¶22.
[66] Exhibit A, ¶22.
[67] Exhibit A, ¶23; Exhibit 6 to Exhibit A.
[68] Exhibit A, ¶23.
[69] Exhibit A, ¶¶ 13-14; Exhibit 6 to Exhibit A, ¶21.
[70] Exhibit A, ¶22; Exhibit 6 to Exhibit A, ¶22.

9

Hatle has never resided in Terrebonne Parish, and has no connection to the venue.[71] Pursuant to established federal law, the forum selection clauses referenced by LeBoeuf in seeking remand are unenforceable. Thus, there is no valid basis for remand.

**ARGUMENT**

I.  The Forum Selection Clauses of the Contracts are Unenforceable on the Basis of Fraud and Overreaching.

While forum selection clauses are presumed to be enforceable under federal law, this presumption can be overcome by a showing that the clause is "unreasonable under the circumstances." *Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997). A forum selection clause is not enforceable "if the inclusion of that clause in the contract was the product of fraud or coercion." *Id.,* 121 F.3d at 963 (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n. 14 (1974)).

It is undeniable in the present case that the incorporation of the forum selection clauses into the Contracts was a product of fraud. The evidence shows that LeBoeuf knew before contracting with Hatle that Hatle could not and would not ever be able to afford the purchase price of LeBeouf's membership interests in CMT. LeBeouf admitted this much to Hatle.[72] As set forth above, LeBoeuf conspired with Wright and Glenn to induce Hatle to sign Contracts that contractually obligated him for over $1.1 million, which they knew he could not repay. LeBoeuf knew litigation was inevitable before ever entering into the purchase agreements with Hatle. Hatle, on the other hand, was ignorant of the scheme that was being carried out against him. He was not advised of and did not understand the implications of the forum selection clauses.[73] Glenn and Wright conspired with LeBoeuf to fraudulently induce Hatle's unknowing agreement to forum

---

[71] Exhibit A, ¶24.
[72] Exhibit A, ¶19.
[73] Exhibit A, ¶15.

selection provisions which would require Hatle to travel to LeBoeuf's hometown. The fraudulent actions of these parties extended specifically to the forum selection clauses of the Contracts. Thus, Hatle's purported waiver of the right of removal through the forum selection clauses is unenforceable and remand is improper.

## II. LeBoeuf is Not Entitled to Attorney's Fees and Costs

As stated above, LeBoeuf has not contested that diversity jurisdiction exists. And because the inclusion of the forum selection provisions in the Contracts were a product of fraud, Hatle reasonably did not rely on them in seeking removal. Therefore, should the Court decide to grant remand, LeBoeuf's request for attorney's fees and costs should be denied because there was an objectively reasonable basis for removal.

There is no presumption in favor of an award of attorney's fees and costs upon remand. 28 U.S.C. §1447(c); *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 137, 126 S. Ct. 704, 709, 163 L. Ed. 2d 547 (2005). Rather, such an award is authorized only when "just", i.e., "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin*, 546 U.S. at 138, 141. When an objectively reasonable basis for the removal exists, a request for attorney's fees and costs should be denied. *Id*.

Hatle removed this matter on the basis of diversity jurisdiction. LeBoeuf has not alleged that there is no reasonable basis for the exercise of diversity jurisdiction, nor even that diversity jurisdiction does not exist. Furthermore, LeBoeuf's contention that Hatle was "well aware" of his purported waiver of removal is contradicted by the evidence.[74] Because the forum selection provisions themselves were the product of fraud, Hatle had an objectively reasonable basis for

---

[74] Rec. Doc. 9-1, p. 12; Exhibit A, ¶15.

11

seeking removal. Consequently, even if remand is allowed, an award of attorney's fees and costs is not "just" and should be denied.

## CONCLUSION

Because the incorporation of the forum selection provisions in the Contracts was a product of fraud, these provisions are unenforceable and do not provide grounds for remand. It is undisputed that there is a valid basis for jurisdiction in this Court pursuant to 28 U.S.C. §1332. Therefore, for the reasons set forth above, LeBoeuf's Motion to Remand should be denied in its entirety.

Respectfully submitted,

NEUNER PATE

*/s/ Kevin P. Merchant*
KEVIN P. MERCHANT, T.A. - #24559
CAROLYN C. COLE - #33066
One Petroleum Center, Suite 200
1001 West Pinhook Road
Lafayette, Louisiana 70503
Telephone: (337) 237-7000
Fax: (337) 233-9450
*Attorneys for Loren L. Hatle*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has been filed electronically with the Clerk of Court and served upon all counsel of record using the Court's CM/ECF system.

Lafayette, Louisiana, this 11th day of February, 2020.

*/s/ Kevin P. Merchant*
COUNSEL